JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MICHAEL,<br><br>        Plaintiff,<br><br>    v.<br><br>BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS and DOES 1 through 20, inclusive,<br><br>        Defendant. | Case No. 2:20-cv-01836-ODW (AFMx)<br><br>**ORDER RE DEFENDANT'S MOTION TO DISMISS [9] AND PLAINTIFF'S MOTION TO REMAND [11]** |

## I.  INTRODUCTION

Before the Court are two motions. First, a Motion to Dismiss filed by Defendant Blue Cross of California dba Anthem Blue Cross ("Anthem"). (Mot. Dismiss ("MTD"), ECF No. 9.) Second, a Motion to Remand filed by Plaintiff Lisa Michael. (Mot. Remand ("MTR"), ECF No. 11.) For the following reasons, Plaintiff's Motion to Remand is **GRANTED** and Defendant's Motion to Dismiss is **DENIED as moot.**[1]

---

[1] After carefully considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lisa Michael is an employee of the Pacific Collegiate School ("PCS"). (MTR 4.) PCS is a California public charter school established in 1999. (MTR 5.)

Anthem is a health care service plan licensed by the Department of Managed Health Care. (Compl. ¶ 6, ECF No. 1-1.) A person covered by Anthem's plan is called a "subscriber" or "member" of the plan, and the contract provided to the member is called an evidence of coverage ("EOC"). (Compl. ¶ 6.) Plaintiff alleges that she is a member of Anthem's plan. (Compl. ¶ 7.)

Plaintiff alleges that her dependent son required certain treatment covered under the terms of her EOC. (Compl. ¶¶ 8–9.) Yet, Anthem denied coverage for the treatment sought based on an erroneous standard governing such claims. (Compl. ¶ 10.) Plaintiff then filed a grievance pursuant to Health & Safety Code section 1368, which Anthem rejected on March 30, 2018. (Compl. ¶¶ 11–12.)

Following the rejection of her grievance, Plaintiff sought an Independent Medical Review ("IMR") of the denied services. (Compl. ¶ 13.) The IMR determined that a portion of the denied treatment sought was medically necessary and a portion was not. (Compl. ¶ 13.) After the IMR determination, Anthem paid the portion found to found to be medically necessary. (Compl. ¶ 14.) However, Anthem only paid a fraction of the billed charges determining that the provider was out of network. (Compl. ¶ 14.) As a result, Plaintiff was forced to incur significant debt to pay for her son's needed treatment. (Compl. ¶ 15.)

Plaintiff alleges that Anthem's rejection of her grievance is part of a systemic failure to properly investigate and resolve grievances as required by Health & Safety Code section 1368, and that despite numerous citations, Anthem has continued to ignore the substance of member grievances. (Compl. ¶ 16.)

Plaintiff filed this action in Los Angeles County Superior Court on December 16, 2019, bringing two causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. (*See generally* Compl.) Anthem

timely removed the action to this Court on February 26, 2020. (Not. of Removal, ECF No. 1.) Anthem asserts that each of Plaintiff's causes of action are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (Not. of Removal.)

### III. LEGAL STANDARDS

#### A. Motion to Remand

Federal courts have subject matter jurisdiction only as authorized by the Constitution and by Congress. U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have original jurisdiction where an action arises under federal law, or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a). A defendant may remove a case from state court to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). The removal statute is strictly construed against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

#### B. Motion to Dismiss

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV.   JUDICIAL NOTICE AND EVIDENTIARY OBJECTIONS

### A.   Plaintiff's Objections to Anthem's Notice of Removal

Anthem's initial Notice of Removal ("Notice") contained two exhibits totaling 231 pages. (Not. of Removal, ECF Nos. 1-2–1-8.) Plaintiff objects that Anthem's removal is deficient because it attaches the wrong EOC as Exhibit A to the Declaration of Christopher Loftin. (Pl.'s Obj. to Evid., ECF No. 12.) Anthem concurs that it attached the incorrect EOC, identifying Plaintiff's employer as Redding School of the Arts rather than PCS. (Opp'n Mot. Remand ("MTR Opp'n") 6, n.5, ECF No. 16.) Both Anthem and Plaintiff have provided the Court with the correct

EOC identifying Plaintiff's employer as PCS.  (*See* Def's Appendix of Evid. ("Def.'s Appx"), Ex. C, ECF No. 16-3; *see also* Michael Decl., Ex. 1, ECF No. 11-2.)  Plaintiff argues that Anthem's failure to attach the correct EOC is fatal to its opposition, and that it may not belatedly amend its Notice to cure non-technical defects.  (Reply Supp. MTR ("MTR Reply") 2–4, ECF No. 21.)  Given that it is now uncontested that the proper EOC is before the Court, and Plaintiff has failed to identify a non-technical difference between the two EOCs, the Court **OVERRULES** Plaintiff's objections based on the inclusion of the incorrect EOC.  (*See* Pl.'s Obj. to Evid.)  Plaintiff's remaining objections are **OVERRULED as moot**.

**B.**     **Plaintiff's Request for Judicial Notice**

Federal Rule of Evidence 201 provides: "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

In support of her Motion to Remand, Plaintiff requests the Court to take judicial notice of several documents within her appendix.  (Pl.'s Req. for Judicial Notice ("Pl.'s RJN"), ECF No. 13.)

First, Plaintiff asks the Court to take judicial notice of the PCS Charter Renewal petition.  (Pl.'s Appx., Ex. 3 at 195, 202, ECF No. 11-3; Pl.'s RJN ¶ 1.)  Second, Plaintiff asks the Court to take judicial notice of the fact that PCS receives state funding.  (Pl.'s Appx., Ex. 2; Pl.'s RJN ¶ 2.)  Third, Plaintiff asks the Court to take judicial notice of the fact that PCS is under the jurisdiction of the California public school system and must comply with the terms set forth in the California Education code.  (Pl.'s Appx., Ex. 2 at 198–200; Pl.'s RJN ¶¶ 3-4.)  Because each of the foregoing facts are sourced from publicly available documents or the California Education code, the facts are not subject to reasonable dispute. *Vasserman v. Henry*

*Mayo Newhall Memorial Hosp.*, 65 F. Supp. 3d 932, 942 (C.D. Cal. 2014). Thus, the Court **GRANTS** Plaintiff's Request for Judicial notice as to these facts.

Plaintiff also asks the Court to take judicial notice of the fact that "public charter schools such as PCS are government entities." (Pl.'s RJN 3.) Anthem objects to this statement and asserts this is a legal conclusion to be decided by the Court. (Def.'s Obj. Pl.'s RJN ("Defs. Obj.") 2, ECF No. 17.) The Court agrees. The status of PCS is subject to reasonable dispute. Anthem's objections to this portion of Plaintiff's Request for Judicial Notice are **SUSTAINED**. The Court **DENIES** Plaintiff's request to take judicial notice of PCS's classification as a government entity.

## C.   Anthem's Request for Judicial Notice

Anthem also seeks judicial notice of one document: the 2017 Annual Return/Report of Employee Benefit Plan – Form 5500 for the Chartershield School Benefits Trust. (Def.'s Req. for Judicial Notice ("Def.'s RJN"), ECF No. 18.; Def.'s Appx, Ex. D; *see also* ECF No. 1-7.) Anthem provides several examples in which courts have taken judicial notice of a Form 5500. *See, e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1125–26 (C.D. Cal. 2015) (taking judicial notice of Form 5500); *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1067 (N.D. Cal. 2017). Plaintiff objects on relevance grounds, and further objects that Anthem has failed to identify an adjudicative fact within the document. (Pl.'s Obj., ECF No. 23.) The Court **OVERRULES** Plaintiff's objections. The Form 5500 is relevant to Plaintiff's plan, and its authenticity is not subject to reasonable dispute as it is available on the United States Department of Labor's website. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("[T]he court can take judicial notice of [p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies.") (internal quotation marks and citations omitted). The Court **GRANTS** Anthem's Request for Judicial Notice of the Form 5500.

### D. Plaintiff's Objections to Anthem's Appendix of Evidence

Finally, Plaintiff objects to Anthem's Appendix of Evidence in its entirety based on procedural grounds. (Pl.'s Obj. to Evid., ECF No. 22.) Plaintiff argues that Anthem cannot add new facts of substance to its Notice of Removal because the 30-day deadline to amend has long since passed. However, the substance of Anthem's evidence is offered in response to Plaintiff's contention that her plan is a government plan. Plaintiff's objections are **OVERRULED**.

## V. DISCUSSION

The determination of the two motions before the Court turns on the issue of whether Plaintiff's plan is governed by ERISA. Thus, the Court first addresses this issue.

### A. ERISA Overview

"Common law claims filed in state court that are preempted by ERISA are subject to removal to federal court under the well-pleaded complaint rule." *Crosby v. Cal. Physicians' Serv.*, 279 F. Supp. 3d 1074, 1080 (C.D. Cal. 2018) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987)). Although a preemption defense may not ordinarily give rise to removal jurisdiction, it does in this instance as "Congress has clearly manifested an intent to make such causes of action within the scope of the civil enforcement provisions of [ERISA] removable to federal court." *Metro. Life Ins. Co.*, 481 U.S. at 66. Plaintiff moves to remand this action to state court because she argues her plan is not an ERISA plan and thus, this Court lacks jurisdiction. (*See generally* MTR.) Plaintiff asserts that because she is an employee of PCS, a California public charter school, her plan falls within the "governmental plan" exception. (MTR 5–6.) Anthem argues that Plaintiff's plan was neither created nor maintained by PCS, but was rather established and maintained by a private, non-governmental entity, and is therefore not a governmental plan. (*See generally* MTR Opp'n)

"ERISA was enacted to protect, *inter alia*, 'the interests of participants in employee benefit plans and their beneficiaries.'" *Silvera v. Mutual Life Ins. Co.*, 884 F.2d 423, 425 (9th Cir. 1989) (quoting 29 U.S.C. § 1001(b)). "In order to provide the widest possible protection to all such plans, ERISA contains a preemption clause which states, in relevant part, that 'this chapter shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan . . . .'" *Silvera*, 884 F.2d at 425 (quoting 29 U.S.C. § 1144(a)). ERISA's expansive preemptive provisions are interpreted broadly to provide a uniform regulatory scheme. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *see also Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005).

"While ERISA generally governs employee group health plans, ERISA does 'not apply to any employee benefit plan if . . . such plan is a governmental plan[.]'" *Crosby*, 279 F. Supp. 3d at 1080 (quoting 29 U.S.C. § 1003(b)(1)). A "governmental plan" is "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). Governmental plans are exempted from ERISA due to federalism concerns. *Wilson v. Provident Life and Acc. Ins. Co.*, 101 F. Supp. 3d 1038 (W.D. Wash. 2015). The parties dispute whether Plaintiff's plan is a governmental plan.

**B.     Plaintiff's Plan**

Through her employment with PCS, Plaintiff is covered under the CharterShield School Benefit Trust Plan ("Plan"). (MTR Opp'n 5–6.) The CharterShield School Benefit Trust ("Trust") established the Plan by entering into the Group Contract with Anthem. (MTR Opp'n 5–6 (citing Decl. of Chris Loftin ("Loftin Decl."), ¶ 5, ECF No. 16-2); *see also* Def.'s Appx, Ex. A.) PCS is one of several employers covered under the Plan, as reflected in Plaintiff's EOC. (MTR Opp'n 6 (citing Loftin Decl. ¶ 8; Def.'s Appx, Ex. C).)[2]

---

[2] As noted above, the Loftin Declaration references the incorrect EOC.

### C. The Governmental Exception

Plaintiff argues that the Plan is exempt from ERISA's coverage because it falls within the government plan exception. (*See generally* MTR.) Anthem raises two principal arguments to demonstrate that Plaintiff's Plan is an ERISA plan not exempted by the governmental exception. (*See generally* MTR Opp'n.) First, Anthem argues that it was the Trust, not PCS, who established and maintained the plan. (MTR Opp'n 12–13.) Second, Anthem argues that even if PCS established or maintained the Plan, PCS is not a government entity. (MTR Opp'n 13–17.) Plaintiff responds that PCS, not the Trust, created the Plan and that PCS is a government entity for the purposes of ERISA. (MTR Reply 4–9.) The Court addresses each contention, in turn.

#### 1. The Trust and PCS Established and Maintained the Plan

The Trust entered into the Group Contract with Anthem to provide coverage for charter schools such as PCS. However, the language describing the relationship of the parties in the Group Contract is ambiguous. It states in pertinent part:

> This Group Contract ("Contract") is entered into by and between CHARTERSHIELD SCHOOL BENEFITS TRUST – PACIFIC COLLEGIATE SCHOOL DBA PACIFIC COLLEGIATE SCHOOL ("Group") and Blue Cross of California d/b/a Anthem Blue Cross Life and Health Insurance Company ("Anthem") (individually referred to as "Party" and together collectively referred to as the "Parties") upon the following terms and conditions . . .

(Def.'s Appx, Ex. A.)

Anthem argues that the Trust was the only party to the contract with Anthem, and therefore the sole creator of the Plan. (MTR Opp'n 12.) Anthem analogizes the instant scenario to one in *Crosby*. (MTR Opp'n 10.) In *Crosby*, the plaintiffs Scott and Karissa Crosby were covered under a California Association of Professional Employees Benefit Trust ("CAPE") plan that Scott Crosby obtained through his employment with the County of Los Angeles. *Crosby*, 279 F. Supp. 3d at 1077. Notably, CAPE was defined as the "contractholder" as well as the "plan sponsor." *Id.*

at 1077–78. The contract further stated that it was "a Contract solely between Contractholder and Blue Shield of California." *Id.* at 1078. After Blue Shield denied coverage of their son's autism treatment, the Crosbys brought suit in state court. *Id.* Blue Shield then removed the action to federal court, and the Crosbys moved to remand the case, arguing the court lacked jurisdiction because the CAPE plan was created by the County of Los Angeles and was therefore exempt from ERISA under the governmental plan exception. *Id.* at 1080–81. The court found that the Crosbys' plan was not created by the County of Los Angeles, but rather it was created by CAPE. *Id.* Specifically, the court noted that membership in the CAPE plan was limited to CAPE's own employees, and that CAPE was responsible for dues payments. *Id.* The court also rejected the argument that receiving public funding was sufficient to "transform" the plan into a governmental plan. *Id.* at 1081.

Plaintiff argues that *Crosby* is distinguishable because the PCS is a party to Group Contract along with the Trust. (MTR Reply 4–5.) The Court agrees. Given the language of the Group Contract, it could reasonably be interpreted that PCS played a role in establishing the Plan.

Moreover, Plaintiff contends that *Crosby* is further distinguishable because evidence shows that PCS played an active role in the establishment and maintenance of the Plan. (MTR 6–8; MTR Reply 7–8.) The Department of Labor promulgates 29 C.F.R. § 2510.3-1(j) to clarify whether, and under what circumstances, an employer's adoption of a group insurance plan would constitute the "establishment" of a plan. "[B]ehavior inconsistent with [the following] criteria would constitute evidence of establishment of a plan." *Silvera*, 884 F.2d at 426; *see also Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988).

> [T]he terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
> (1) No contributions are made by an employer or employee organization;
> (2) Participation [in] the program is completely voluntary for employees or members;

>  (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer.

29 C.F.R. § 2510.3-1(j). Plaintiff asserts that PCS engages in several actions inconsistent with the criteria set out in the regulation and thus, PCS is involved in the establishment and maintenance of the Group Plan.

Specifically, Plaintiff argues that PCS pays a portion of the Anthem premiums for their employees while deducting the remainder from the employees' paychecks on a pre-tax basis. (MTR 7.) Anthem counters that withholding a portion of Plaintiff's paycheck is insufficient to show maintenance of the Plan. (MTR Opp'n 13 (citing *Peterson v. Am. Fidelity Assurance Co.*, 2013 WL 6047183, at *4 (D. Nev. Nov. 13, 2013)).) The Court finds that while withholding a certain portion of an employee's paycheck in the form of a payroll deduction may not be enough to show establishment or maintenance, affirmatively paying for a portion of the member premiums is sufficient. *See* 29 C.F.R. § 2510.3-1(j)(1).

Plaintiff also argues that participation in the Group Plan is not completely voluntary as PCS is offering the Anthem plans on a "take it or take it" basis. (MTR 7.) Employees of PCS who would like health insurance through their employer are only offered the choice of an Anthem PPO or HMO; no other insurance options are offered. (MTR 7.) However, this does not establish that PCS employees are forced to enroll in an Anthem plan or are automatically enrolled. Accordingly, this does not violate § 2510.3-1(j)(2). *Cf. Silvera*, 884 F.2d at 426 ("The undisputed facts are that City presented the MONY plan to its employees not on a 'take it or leave it' basis, but on a 'take it or take it' basis. [The] City not only endorsed the plan, it automatically provided the plan to all its employees.").

As PCS's behavior is inconsistent with at least one prong, the Court finds PCS sufficiently involved in the establishment of the Group Plan. *Id.*

### D. PCS is a Government Entity for the Purposes of ERISA

Next the Court addresses Anthem's argument that even if PCS established or maintained the Plan, PCS is not a government entity. (MTR Opp'n 13–17.) Plaintiff's Motion to Remand appears to raise a matter of first impression in our Circuit: whether or not California Public Charter Schools are considered to be "governmental entities" for the purposes of ERISA. Critically, "an entity may be a State actor for some purposes but not for others." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 813 (9th Cir. 2010) (internal citation and quotation omitted). Courts often have difficulty classifying charter schools, as they exhibit a hybrid structure which "in some respects blur[s] the distinction between public and private schools." *Ghafur v. Bernstein*, 131 Cal. App. 4th 1230, 1239 (2005).

Plaintiff cites two cases interpreting government "agency or instrumentality" under 29 U.S.C. § 1002(32). First, she cites *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010), which she suggests implies that charter schools are "political subdivisions" of the state and are therefore government entities for the purposes of ERISA. (MTR 6.) However, the *Daniels-Hall* court was not dealing with charter schools, nor did it expressly define California charter schools as government entities. Plaintiff also cites *Nampa Classical Academy v. Goesling*, which held the Idaho charter schools could not bring a 42 U.S.C. § 1983 claim against the state because they were expressly defined as government entities, and as such, "ha[d] no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." 447 Fed. Appx. 776, 777–78 (9th Cir. 2011). (quoting *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009)). On this basis, Plaintiff suggests that *Nampa Classical Academy* read in tandem with *Daniels-Hall* indicates that PCS is a political subdivision of the State, and that as such, it is a government entity for the purposes of ERISA. (MTR 6.) But as Anthem correctly notes its Opposition, neither of these cases deal with the government entity analysis *for the purposes of ERISA*. (MTR Opp'n 11.)

In analyzing whether an entity is considered a government entity for the purposes of ERISA, circuits have applied various tests. *See Agullard v. Principal Life Ins. Co.*, 685 F. Supp. 2d 947, 954–55 (D. Ariz. 2010) (collecting cases). For instance, the Seventh Circuit applies the "NLRB test", which asks whether the entity was "either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or the general electorate." *Shannon v. Shannon*, 965 F.2d 542, 548 (7th Cir. 1992) (quoting *NLRB v. Natural Gas Utility Dist. of Hawkins County, Tenn.*, 402 U.S. 600, 604–05 (1971)). The Second Circuit considers six factors enumerated by the Internal Revenue Service to determine whether an entity is an agency or instrumentality of the government for purposes of 26 U.S.C. § 414(d), which contains a definition of "government plan" very similar to ERISA's definition of the term. *See Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 917–18 (2d Cir. 1987), *cert. denied*, 485 U.S. 936 (1988). The six factors include (1) whether the entity "is used for a governmental purpose and performs a governmental function," (2) whether performance of its function "is on behalf of one or more states or political subdivisions," (3) whether there are any "private interests involved," (4) whether "control and supervision of the organization is vested in public authority," (5) whether "express or implied statutory or other authority is necessary for the creation and/or use" of the entity, and (6) the "degree of financial autonomy and the source of [the entity's] operating expenses." *Id.* (quoting Rev. Rul. 57-128, 1957-1 C.B. 311). The D.C. Circuit, rejecting the IRS factor test from *Rose*, focuses primarily on "the nature of an entity's relationship to and governance of its employees." *Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1205 n.11 (D.C. Cir. 1993).

Anthem invites this Court to adopt the IRS test laid out in *Rose*, and that if the Court elects to do so, suggests it will reach the conclusion that charter schools are non-governmental entities for the purposes of ERISA, as the court found in *Krupp v. Lincoln Univ.*, 663 F. Supp. 289, 292 (E.D. Pa. 1987). (MTR Opp'n 14.) Anthem

argues that examining the IRS factors, on balance, PCS should not be considered a government entity. (MTR Opp'n 15–17.) Specifically, Anthem points out that PCS cannot meet the second, third, and fourth factors. (MTR Opp'n 15–17.) On reply, Plaintiff offers no analysis concerning the IRS factors, and simply urges this Court to ignore it as non-binding in the face of the Ninth Circuit cases she cites. (MTR Reply 9.) However, as previously noted, Plaintiff's authority does not consider whether charter schools are government instrumentalities for the purposes of ERISA.

Even if the Court were to agree with Anthem regarding certain factors, on balance, the factors and considerations laid out above indicate that PCS is government agency or instrumentality for the purposes of ERISA. Anthem is correct to note that some of PCS's characteristics suggest that it is not a government entity; for instance, PCS operates as a non-profit corporation "that operates autonomously from the Santa Cruz County Board of Education and the Santa Cruz Office of Education." (MTR Opp'n 15 (quoting Pl.'s Appx at 257).) Additionally, PCS is governed by a board of directors, comprised of private individuals. (MTR Opp'n 15.) Anthem also notes that upon dissolution of the corporation, PCS's assets do not revert to the State, even though it receives State funding. (MTR Opp'n 16.)

However, the bulk of the factors indicate that PCS is a government agency or instrumentality. First, and foremost, as a charter school, PCS is purely a creature of California statute. Charter schools in California are part of the public school system and operate under the California Charter School Act of 1992 (Cal. Educ. Code § 47600 *et seq.*) ("CSA"). Under the CSA, Plaintiff correctly notes that as a charter school, PCS receives substantial funding from, and is subject to the jurisdiction of the California Public School system. Cal. Educ. Code § 46715. As Plaintiff notes, PCS is subject to extensive oversight, and must comply with numerous regulations to maintain its charter. (*See* MTR Opp'n 5–6.) Anthem asserts that "governmental regulation does not amount to government control" and that PCS is exempt from many rules promulgated by the State Board of Education. (MTR Opp'n 16.) The

Court finds this argument unavailing, because should PCS (or any charter school) fail to comply with the law or the provisions of its charter, the chartering authority has the power to revoke the charter. Cal. Educ. Code § 47607.

Second, the Court examines the function of PCS. As a charter school, it performs a central governmental function of providing public education. *Belanger v. Madera Unified School District*, 963 F.2d 248, 253 (9th Cir. 1992) ("California law treats public schooling as a statewide or central government function."). Anthem argues that despite PCS's role in providing education, it should not be considered a government entity because it operates independently from county and State authority. (MTR Opp'n 16–17.) This argument is likewise unconvincing: "Although [charter schools] have operational independence, an overarching purpose of the charter school approach is to infuse the public school system with competition in order to stimulate improvement in *all* its schools." *Wilson v. State Bd. of Educ.*, 75 Cal. App. 4th 1125, 1139 (1999) (emphasis in original) (citing Cal. Educ. Code § 47601(g)).

Third, the Court examines the control of PCS. Anthem argues that because the PCS board is comprised solely of non-public officials, it is controlled by private interests. (MTR Opp'n 16.) However, as with other charter schools, the chartering authority is entitled to a least one representative on the board of directors. *See* Cal. Educ. Code § 47604(c). Moreover, "charter school officials are officers of public schools to the same extent as members of other boards of education of public school districts. So long as they administer charter schools according to the law and their charters, as they are presumed to do, they stand on the same constitutional footing as noncharter school board members. If they violate the law, the charter will be revoked." *Wilson*, 75 Cal. App. 4th at 1141.

As a final consideration, the Court considers the legislative history of ERISA. *See Agullard*, 685 F. Supp. 2d at 955 ("To better understand the underlying concerns and reasons for ERISA generally and for the 'government plan' exemption more specifically, some courts have also considered the legislative history of ERISA's

enactment."). The government plan exemption is rooted in "the belief that government entities are better equipped to avoid the pitfalls of under-funding and premature termination of benefit plans" by virtue of their taxing powers. *Id.*; *see also Rose*, 828 F.2d at 913. Thus, an important inquiry is then whether the entity has taxing powers or is funded by an entity that has taxing powers. *Agullard*, 685 F. Supp. 2d at 955. Here, PCS has no taxing authority. However, PCS derives the majority of its funding from the State, which does have taxing authority. Accordingly, because it is "backed by governmental taxing powers, the concerns underlying ERISA's enactment are substantially alleviated in this case." *Id.* at 956.

In conclusion, Plaintiff has demonstrated that PCS "established or maintained" the Plan, and that PCS is a "government entity" for the purposes of ERISA. Thus, the government exception applies to Plaintiff's claims, and they are therefore not subject to ERISA's preemptive force. Accordingly, without preemption, the Court has no basis for federal subject matter jurisdiction. The Court therefore **GRANTS** Plaintiff's Motion to Remand. Anthem's Motion to Dismiss is **DENIED as moot**.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED**. Defendants' Motion to Dismiss is **DENIED as moot**. The Court **REMANDS** this action to the Los Angeles County Superior Court, 111 N. Hill Street, Los Angeles, CA 90012.

**IT IS SO ORDERED.**

August 7, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**